

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-11-00898-CV

**IN THE INTEREST OF N.T.P.** and L.C.P., Children

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-01862
Honorable Victor Hugo Negron Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Concurring and Dissenting Opinion by:  Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:  December 31, 2012

AFFIRMED

Appellant, Susan Meyer, appeals from an order modifying appellee Mark Pistone's child support obligations and an order clarifying a Domestic Relations Order (Military Retirement). We affirm.

## BACKGROUND

Prior to their divorce, appellant, appellee, and their two children lived in San Antonio, Texas, where appellee was stationed with the United States Air Force. Appellant and the two children went to Missouri in June 2006 to visit appellant's father. At this time, appellant and appellee knew he would soon be transferred to England.[1] In April 2007, appellee filed a divorce petition in Bexar County, Texas. On May 25, 2007, the trial court rendered a Final Decree of

---

[1] Appellee was stationed in England from June 2006 to December 2009.

Divorce dissolving the appellant's and appellee's marriage and ordering appellee to pay $1,500.00 per month in current child support for the couple's two children, 100% of all travel expenses, and sixty percent of private school tuition.[2] On that same date, the trial court also signed a Domestic Relations Order (Military Retirement) ("the DRO") dividing the military retirement benefits. In December 2009, appellee was transferred back to San Antonio, Texas, where he resided until mid-2011. On March 22, 2011, appellee filed a Petition for Modification and Clarification of Prior Order in which he asserted he was "retiring from his position with the United States Air Force and, as a result, his income will be substantially reduced, and, there[fore], the previously ordered support payments should be decreased accordingly . . . ." The petition also sought clarification of the DRO.

In May 2011, appellee married a woman stationed with the military in England, and appellee relocated back to England in June 2011. On July 1, 2011, appellee retired after thirty-three years of military service. Following the August 2011 hearing on the Petition for Modification and Clarification, the trial court issued an order that reduced appellee's child support to $1,087.06 per month ("the Child Support Order"). The order also modified the travel expenses by ordering appellant to pay one-half of the travel costs that resulted from appellee's move to England. The court denied appellee's request that he pay no amount towards the children's private school tuition. On October 14, 2011, the trial court signed an Order Clarifying Prior Order and Domestic Relations Order (Military Retirement) ("the Clarification Order"). This appeal from both orders ensued.

---

[2] The trial court later signed a Final Decree of Divorce Nunc Pro Tunc, which contained the same child support travel expenses and private tuition provisions as the 2007 Decree.

## LONG-DISTANCE TRAVEL EXPENSES & CHILD SUPPORT

In her first issue, appellant characterizes the portion of the Child Support Order modifying the travel expense portion of the divorce decree as modifying "custody, possession, and access," rather than child support, because travel expenses are discussed in the section of the decree entitled "Possession and Access."  Appellant also relies on the fact that neither the children, she, nor appellee live in Texas.  Therefore, according to appellant, under Family Code section 152.202, the trial court lost jurisdiction to make a child custody determination, including modifying travel expenses, because neither the children, nor the children and one parent, have a significant connection with Texas and substantial evidence is no longer available in Texas concerning the children's care, protection, training, and personal relationships.  TEX. FAM. CODE ANN. § 152.202(a)(1) (West 2008).  Appellant also argues that, under Family Code section 155.003, the trial court "[could] not exercise its continuing, exclusive jurisdiction to modify possessory conservatorship or possession of or access to a child[, including modifying travel expenses, because] the child's home state is other than this state and all parties have established and continue to maintain their principal residence outside this state."  *Id.* § 155.003(c)(1).  In her second issue, appellant asserts the trial court erred in reducing appellee's monthly child support obligation because there is insufficient evidence to support a finding of material and changed circumstances.

Appellee, on the other hand, characterizes the Child Support Order as modifying "child support," which is governed by Family Code section 156.401; therefore, appellee argues the trial court did not lose jurisdiction.  Family Code Chapter 152, on which appellant relies, defines a "child custody determination" as "a judgment, decree, or other order of a court providing for legal custody, physical custody, or visitation with respect to a child."  *Id.* § 152.102(3).  The term

specifically excludes "an order relating to child support or another monetary obligation of an individual." *Id.* Family Code Chapter 155 pertains to possessory conservatorship or possession of or access to a child. But, in this case, the issue regarding travel expenses does not involve possession or access, it involves a "monetary obligation." Therefore, we agree with appellee that the order modified child support; accordingly, the trial court had jurisdiction to enter the modification. We now turn to Family Code section 156.401 to determine whether appellee satisfied the grounds for a modification of both the travel expenses portion of the decree and a modification of his child support obligation.

## A.     Travel Expenses and Child Support Obligation

A court with continuing, exclusive jurisdiction may modify an order that provides for the support of a child. *Id.* § 156.001. A court may modify an order that provides for the support of a child, if, among other circumstances not applicable here, "the circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition." *Id.* § 156.401(a)(1)(A) (West Supp. 2012). A court's child support order will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

In this case, appellee did not contend the children's circumstances had changed. Instead, he alleged a change in his own circumstances since the rendition of the 2007 divorce decree based on his retirement from the military. The divorce decree contained a provision related to "Long-Distance Overseas Access and Visitation," under which appellee was obligated to pay all costs associated with the children's travel, except for certain other costs not relevant here, including international travel. Under the decree, appellant was required to pay sixty percent of the children's private school tuition. At the modification hearing, appellant testified on cross-

examination that the children's school reduced the tuition by about $2,000, which she applied entirely to her forty percent of the tuition, providing no benefit of the reduction to appellee's sixty percent. Also pursuant to the divorce decree, appellee was required to pay child support in the amount of $1,500.00 per month for both children, and later, $1,200.00 for one child. At the time of the divorce, appellee's gross monthly salary was $10,550.14. At the time of the hearing on his petition, appellee was retired, living in England with his new wife, and not employed. He was entitled to receive monthly retirement income in the amount of $6,442.00, less the amount determined to be payable to appellant under the DRO.

On appeal, appellant raises several challenges to the Child Support Order. First, appellant asserts that a change in circumstances is viewed from the date of the divorce decree to the date on which a petition for modification is filed, rather than the date of the hearing on the modification. According to appellant, when appellee filed his petition he was not yet retired, but all evidence offered by appellee in support of his petition was evidence of his alleged changed circumstances as they existed at the time of the hearing on the petition and not the circumstances as of the filing date. Second, she argues that appellee's retirement, and his subsequent decrease in pay, as well as his obligation to pay for all travel expenses, including international travel, were contemplated under the divorce decree. Therefore, according to appellant, neither is evidence of a changed circumstance. Third, appellant contends appellee's voluntary unemployment does not justify a reduction in his child support obligation.

### 1. Timing of Changed Circumstances

To determine whether there has been a substantial and material change, the court must compare the financial circumstances of the child and the affected parties at the time the order was entered with their financial circumstances at the time of the hearing on the modification.

*See Melton v. Toomey*, 350 S.W.3d 235, 238 (Tex. App.—San Antonio 2011, no pet.) (holding petitioner had burden to present evidence of historical and current financial circumstances). "Without evidence setting out the financial circumstances of the parties at the time the original decree of divorce was entered, or the financial circumstances of the parties at the time of the hearing on the motion to modify, the family court cannot make a determination that there has been a material and substantial change." *Cole v. Cole*, 882 S.W.2d 90, 92 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *accord Melton*, 350 S.W.3d at 238. In this case, appellee's March 11, 2011 petition for modification was based on an impending change in circumstance— his July 1, 2011 retirement.[3] Appellee's petition specifically provided appellant with notice that the change in circumstances were because he was "retiring from his position with the United States Air Force and, as a result, his income will be substantially reduced, and, there[fore], the previously ordered support payments should be decreased accordingly . . . ." We hold the trial court appropriately considered evidence of whether and how appellee's circumstances had changed since the time of the decree to the time of the hearing on the modification.

### 2. Evidence of Change in Circumstances

If a circumstance was contemplated at the time of an original agreement, its eventuality is not a changed circumstance, but is instead an anticipated circumstance that cannot be evidence of a material or substantial change of circumstances. *See In re M.A.F.*, No. 12-08-00231-CV, 2010 WL 2178541, at *3 (Tex. App.—Tyler May 28, 2010, no pet.) (mem. op., not designated for publication) (finding no change because mother knew child would get older, be attending school, and living with divorced parents, sometimes on alternating days of the week; these circumstances were anticipated by parties and expressed in divorce decree); *Hoffman v. Hoffman*, No. 03-03-

---

[3] In its conclusions of law, the trial court stated appellee filed his motion to modify child support "simultaneously with his recent retirement from the military . . . ."

00062-CV, 2003 WL 22669032, at *6 (Tex. App.—Austin Nov. 13, 2003, no pet.) (mem. op., not designated for publication) (finding no change because mother's move was anticipated by parties and expressed in divorce decree).

While we agree with appellant that international travel and appellee's eventual retirement were mentioned in the divorce decree, we do not agree that the specific date of his retirement some four years later or that he would reside in England after his retirement were contemplated under the decree. In addition to requiring appellee to pay for costs associated with international travel, the divorce decree states only as follows with regard to his retirement: "The Military Retired Pay awarded to each of the parties in accordance with the Uniformed Services Former Spouses' Protection Act . . . is more specifically set forth in the Qualified Domestic Relations Order . . . ." The DRO states appellee is not retired from the Air Force at the time of the order and the "award of disposable retired pay made to [appellant] in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act." The order directed appellee to "apply for retirement as soon as he is eligible and it is administratively feasible."

Therefore, at most, only an eventual retirement was contemplated, and there is no dispute that appellee's retirement resulted in a decrease in his pay. The evidence established that appellee's pre-retirement pay decreased from a gross monthly amount of $10,550.14 to a post-retirement gross monthly amount of $6,442.00, less the amount determined to be payable to appellant under the DRO. We conclude the reduction in appellee's pay due to his retirement constitutes a material and substantial change in circumstances. However, we must next decide whether the trial court should have considered appellee's earnings potential in determining his child support obligation, as opposed to his actual earnings.

### 3. Voluntary Underemployment

Appellant asserts that appellee's reduced income is the result of his voluntary unemployment because appellee testified he was capable of earning $60,000 to $90,000 as a nurse in the private sector; however, he did not have any present plans to work during his retirement. A child-support obligor qualified to obtain gainful employment cannot avoid a support obligation by voluntarily remaining underemployed or unemployed. *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011).[4] On the other hand, a court "should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past." *Id.* at 82. A trial court must consider the obligor's right to pursue his or her own happiness with the concurrent duty to support and provide for his or her child. *Id.* at 81-82. The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Id.* at 82. Once the obligor has offered proof of his or her current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. *Id.* The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Id.* The trial court may consider whether the obligor is attempting to avoid child support by becoming or remaining unemployed or underemployed as a factor in determining child support. *Id.* at 76 (noting that such evidence may be particularly relevant or dispositive of the matter). However, there is no requirement that there be evidence the obligor reduced his income for the purpose of decreasing child support payments. *See id.* at 76, 80, 83. In addition to considering a parent's duty to support and provide for his or her child, a court also must consider any proffered rebuttal evidence of reasons for an

---

[4] "[T]the same intentional unemployment/underemployment analysis under section 154.066 may be applied in both original child support orders and modifications of existing child support orders." *Iliff*, 339 S.W.3d at 81 n.5 (citing to TEX. FAM. CODE § 156.402 (allowing the court to consider "the child support guidelines . . . under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order if the modification is in the best interest of the child")).

obligor's intentional unemployment or underemployment, including a parent's pursuit of his or her own happiness and other reasons that might be in the best interest of the child. *See id.* at 82 (listing various laudable reasons why a spouse might choose unemployment or underemployment).

Here, there is no dispute that appellee voluntarily retired from the Air Force after thirty-three years of service and he voluntarily moved to England to be with his second wife. The question then becomes whether appellee is intentionally underemployed. When asked whether he would take other employment, appellee responded, "Not at this time. Certainly not while I'm in England. The opportunities aren't there, as she [appellant] well knows." When asked if he suffered from any disabilities, appellee listed sleep apnea, arthritic joints, reflux, allergies, hearing loss, and foot surgery. In response to counsel's question about whether any of these disabilities prevented him from taking employment, appellee responded that "it depends on the type of employment." As for a return to his former career as a nurse, appellee said nursing would not be "well-suited to long-term" because of his disabilities. Appellee testified that one of the reasons he decided to retire was because he failed his last fitness test. Although he did not retire with any disabilities, he has applied to the VA for disability. He agreed that a nurse with his experience, training, and skills is capable of earning $60,000 to $90,000 per year. But he stated he was not able physically to take that type of job anymore. Appellee said he might work "at some time," but he was not going to work "in the near term." Finally, appellee said that if he had a job while in England he would not be able to spend as much time with his children.

Appellant relies on *In the Interest of S.B.C.*, for her argument that the trial court should have rejected appellee's request for a modification based on his voluntary unemployment following his retirement. In *S.B.C.*, a panel of this court considered whether the trial court

abused its discretion by denying appellant's motion to modify. 952 S.W.2d 15, 18 (Tex. App.—San Antonio 1997, no pet.). In that case, the original child support order was based on appellant's income from two jobs and it was undisputed that appellant voluntarily separated from the military in 1996 and voluntarily left San Antonio, thereby quitting his second job. It was also undisputed that his only current source of income was his retirement military pay of $1,332 per month. This court agreed the record showed a change in circumstances after retirement. *Id.* However, the panel balanced against these circumstances evidence that the appellant was intentionally unemployed. He testified he had voluntarily left the military, voluntarily left San Antonio, and remained voluntarily unemployed because he was preparing himself for law school. He acknowledged he was physically able to work and had an undergraduate degree and a master's degree in business, and approximately twenty years' work experience as a medical lab specialist. The panel concluded the trial court did not abuse its discretion in finding that the appellant was intentionally unemployed, and, therefore, the trial court was entitled to consider his earning potential based on his educational background and work experience. *Id.*

In this appeal, we are faced with a trial court ruling opposite to that in *S.B.C.*: we must review for an abuse of discretion the trial court's granting of a petition to modify. The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *Worford*, 801 S.W.2d at 109. When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's discretion. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Here, on this record, we cannot say the trial court erred by granting appellee's petition based on appellee's actual earnings rather than on his earning potential.

**B.      Best Interest of Children**

On appeal, appellant contends requiring her to pay a portion of the travel expenses, particularly those associated with international travel, forces her to spend a large part of the child support she receives on airline tickets.  She argues appellee has not demonstrated that it would be in the children's best interest to trade child support for travel costs.  Appellant raises the complaint that appellee did not show a modification was in the children's best interest only as to the travel expenses issue.  She does not raise this same complaint with regard to the reduction in appellee's child support obligation.  However, because the travel expense issue and the child support issue are considered together, this complaint may be relevant to whether the trial court erred in lowering appellee's overall support obligation.

The best interest of the child is the "salient consideration" in child support matters. *S.B.C.*, 952 S.W.2d at 17.  Also, Family Code section 156.402, which pertains to the effect of the child support guidelines, provides that a trial court "may consider the child support guidelines for single and multiple families under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order *if the modification is in the best interest of the child*."  TEX. FAM. CODE § 156.402(a) (emphasis added).  "In the interest of the children, the trial court should consider the parties' financial situations to ensure that the travel expenses are not so great that they would prevent the proper support of the children by either party." *Matter of the Marriage of Bertram*, 981 S.W.2d 820, 830 (Tex. App.—Texarkana 1998, no pet.).  The only evidence in the record supporting a best interest finding is appellee's testimony that lowering his child support obligation would be in the children's best interest because, if he does not work, then he can spend more time with the children.  While we may not have arrived at the same conclusion as the

trial court, we cannot substitute our judgment for that of the trial court. Because the record contains some evidence to support the trial court's best interest finding, we must conclude the trial court did not abuse its discretion.

## C. Conclusion

The trial court had before it evidence that appellant was paying less than her forty percent share of the children's tuition due to a reduction that was not applied to reduce appellant's sixty percent share of the expense, appellee's decision to join his wife in England, appellee's various physical ailments, his reduced pay resulting from his retirement, and his stated desire to not presently seek work so that he could visit with his children more often. On this record and in light of the standard of review, we cannot say the trial court abused its discretion in reducing appellee's child support obligation, including his portion of travel expenses.

## CHALLENGE TO CLARIFICATION ORDER

In her final issue, appellant asserts several reasons why the trial court erred in entering the Clarification Order. Appellant first argues there was no need to clarify the original DRO because there is no evidence or any finding that the original DRO's language was not specific enough to be enforceable by contempt or that the agency in charge of administering military domestic relations orders had any difficulty interpreting or implementing the DRO. Second, appellant argues that, even if a clarification was appropriate, the Clarification Order resulted in an improper substantive modification, and not merely a clarification, of the original DRO, which the trial court was without jurisdiction to do.

A DRO, such as the one here, "is a species of post-divorce enforcement order." *Quijano v. Quijano*, 347 S.W.3d 345, 353 (Tex. App.—Houston [14th Dist.] 2011, no pet.). The purpose of a DRO is to create or recognize an alternate payee's right, or to assign an alternate payee the

right, to receive all or a portion of the benefits payable to a participant under a retirement plan. *Id.* at 353-54.  A trial court that renders a divorce decree generally retains the power to enforce or clarify the property division approved of or contained in the decree.  TEX. FAM. CODE §§ 9.002, 9.006(a), 9.008.  The court may enter a clarifying order to enforce compliance with the original division of the property.  *Id.* § 9.008(b); *see also* § 9.1045(a) (providing that a "court that renders a qualified domestic relations order retains continuing, exclusive jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court").  However, after its plenary power expires, a court may not alter, amend, or modify the substantive division of property in the decree.  *Id.* § 9.007(a); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003).  An order that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce is beyond the jurisdiction of the trial court and is unenforceable.  TEX. FAM. CODE § 9.007(b).  Whether a trial court has jurisdiction is a question of law that we review de novo.  *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002); *Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 551 (Tex. App.—San Antonio 2002, pet. denied).  The issue of jurisdiction in this case turns on whether the Clarification Order was a modification of the DRO or simply a clarification of the DRO.

Here, the original DRO provided that appellant was entitled to

the amount of retired pay then equal to 50 percent times the fraction (percentage) that results from dividing the sum equal to the gross retired pay of a 0-5 Lt. Colonel with 16 years and zero months of creditable service toward retirement on the date of divorce by the amount of the monthly gross retired pay [appellee] is entitled to receive at retirement, which result is the percentage awarded [appellant] of [appellee's] disposable retired pay at retirement.

The Clarification Order now provides that appellant is entitled to

the amount of retirement pay then equal to

50.0% X $2,549.00 / $6,442.00 X ([appellant's] disposable retired pay),

where $2,549.00 is equal to the monthly gross retired amount of a 0-5 (Lt.Col.) with 16 years and 0 months of creditable service toward retirement on May 25, 2007, the date of divorce, and $6,442.00 is equal to the monthly gross retired pay that [appellant] is entitled to receive at retirement.

IT IS THEREFORE ORDERED that DFAS pay [appellant] each month, to the extent allowed by law, 19.7842% of [appellee's] disposable retired pay . . . .

We first address appellant's argument that the trial court erred because there is no evidence or any finding that the original DRO's language was not specific enough to be enforceable by contempt or that the agency in charge of administering military domestic relations orders had any difficulty interpreting or implementing the DRO. The Family Code provides that if a plan administrator "determines that a domestic relations order does not satisfy the requirements of a qualified domestic relations order or similar order, the court retains continuing, exclusive jurisdiction over the parties and their property to the extent necessary to render a qualified domestic relations order." TEX. FAM. CODE ANN. § 9.104 (West 2006). However, nothing in the Family Code section pertaining to qualified domestic relations orders requires such a determination by a plan administrator as a prerequisite to clarification of the order.

We also disagree with appellant's argument that there must be a finding that the original order was not specific enough to be enforceable by contempt. Prior to the 2005 enactment of section 9.1045, courts looked to Family Code section 9.008, which provided that "[o]n a finding by the court that the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." TEX. FAM. CODE ANN. § 9.008(b) (West 2006); *see Pearcy v. Pearcy*, 884 S.W.2d 512, 514 (Tex. App.—San Antonio 1994, no

writ) (relying on prior version of Family Code section 9.008 to conclude clarification of division of military pay was improper because "there was neither an expressed nor implied finding that the division of military retirement was so unspecific that it could not be enforced by contempt."). However, section 9.1045 provides that a "court that renders a qualified domestic relations order retains continuing, exclusive jurisdiction to amend the order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court." *Id.* § 9.1045(a). Nothing in section 9.1045 requires a finding that the original DRO was not enforceable by contempt as a prerequisite to clarification of the order.

Next, appellant asserts there was no need for a clarification because the original DRO told the administrative agency everything it needed to know in order to pay her a percentage of appellee's retirement because the DRO specified the formula. The DRO requires that only two numbers be determined: (1) the numerator which states the gross retired pay of a 0-5 Lt. Colonel with 16 years and zero months of creditable service toward retirement as of May 25, 2007 (the date of divorce) and (2) the denominator which states the amount of the monthly gross retired pay appellee was entitled to receive on July 1, 2011 (the date of his retirement). However, this court has previously held that the trial court did not abuse its discretion in clarifying a DRO by determining the actual numbers to be used in the formula. *See Caracciolo v. Caracciolo*, 251 S.W.3d 568, 571-72 (Tex. App.—San Antonio 2007, no pet.); *Contreras v. Contreras*, 974 S.W.2d 155, 158 (Tex. App.—San Antonio 1998, no pet.). Therefore, under *Caracciolo* and *Contreras*, we likewise conclude the trial court did not abuse its discretion by clarifying the divorce decree to include the actual numbers. Accordingly, we turn next to appellant's argument that the Clarification Order was a substantive modification because the trial court reduced her share of appellee's military retired pay from 22.25 percent to 19.78 percent.

As to the actual numbers used in the formula, the parties do not disagree that $6,442.00 is the correct denominator, that is, the amount of the monthly gross retired pay appellee was entitled to receive at retirement. The parties also do not dispute that the numerator—the monthly gross retired amount of a 0-5 (Lt.Col.) with 16 years and 0 months of creditable service toward retirement on May 25, 2007—is calculated starting with an amount specified in an exhibit entitled "Basic Pay — Effective April 1, 2007." Therefore, we will assume, without deciding, that this chart accurately reflects the "gross retired pay of a 0-5 Lt. Colonel with 16 years and zero months of creditable service toward retirement." Although the parties agree on the source of the numerator, they do not agree on which column defines appellee's years of credible service. More specifically, the parties' dispute centers on whether the numerator is calculated using the chart's "Over 14" column or the chart's "Over 16" column for years of creditable service. The term "years of creditable service" "means the number of years of service creditable to a member in computing the member's retired or retainer pay (including 1/12 of a year for each full month of service that is in addition to the number of full years of service of the member)." 10 U.S.C.A. § 1409(c). Appellant asserts the amount the "gross retired pay of a 0-5 Lt. Colonel with 16 years and zero months of creditable service toward retirement" should be taken from the "Over 16" column of cumulative years of service (i.e., sixteen years and zero months or more). Appellee counters that the correct column is the "Over 14" column of cumulative years of service (i.e., fourteen years and one month to sixteen years and zero months). Neither party offers any authority for their interpretation of which column applies; therefore, we apply a basic rule of construction, which is that we consider the entire chart in an effort to harmonize and give effect to all of the columns in the chart.

The "Basic Pay — Effective April 1, 2007" chart sets out the columns for years of credible service beginning with "2 or Less"; the next column is "Over 2," the next is "Over 3," then "Over 4," then "Over 6," "Over 8," and continuing until the last column which is "Over 40." A service member does not qualify for the "Over 2" years of credible service column until he or she has attained at least two years and one full month of creditable service. *See* 10 U.S.C.A. § 1409(c). Thus, each column indicates the "basic pay" to which a service member is entitled upon achieving one month or more "over" the stated number of years. In this case, appellee served sixteen years and no more while married. Therefore, we conclude the trial court correctly used the pay amount listed in the "Over 14" column, rather than the "Over 16" column, to calculate the amount of the numerator. As a result, the trial court did not modify but merely clarified the DRO. Accordingly, the trial court had jurisdiction to enter the Clarification Order.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's Child Support Order and Clarification Order.

Sandee Bryan Marion, Justice