

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00220-CV

**IN THE INTEREST OF A.B.R.**, W.C.R., and K.R.R., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-CI-19862
Honorable Stephani A. Walsh, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice
Concurring and Dissenting Opinion by: Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Karen Angelini, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 22, 2018

REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART

This appeal and cross-appeal stem from a trial court's modification of an agreed final order in a suit affecting the parent–child relationship. The children subject to this suit are A.B.R., W.C.R., and K.R.R., and their parents are Carlos and Victoria. Among her several issues, Victoria argues there was no material and substantial change of circumstances authorizing the trial court to modify the final order. Among the issues in his cross-appeal, Carlos argues the trial court erred by requiring him to post a $50,000 bond. We conclude both parties' issues have merit, reverse the trial court's order in its entirety, render judgment denying Carlos's petition to modify the final order and Victoria's conditional cross-petition to modify the final order, and remand this case for the trial court to reconsider the award of attorney's fees.

**BACKGROUND**

In December 2014, Victoria filed for divorce from Carlos. Victoria also sought sole managing conservatorship of the children, alleging that appointing Carlos as a joint managing conservator would not be in the children's best interest. Carlos generally denied Victoria's allegations. Following mediation, the parties filed a joint petition, stating the parties would enter into a written agreement containing provisions for conservatorship, child support, medical support, access, and possession of the children. The parties also filed an agreed motion to sever the divorce action into a separate cause number, and the trial court granted the motion.

The trial court signed an agreed final order that recited, "This order is stipulated to represent a merger of a mediated settlement agreement between the parties." The Mediated Settlement Agreement was executed on March 4, 2015. The agreed final order appointed Carlos and Victoria as joint managing conservators, and addressed various aspects of the parent–child relationship, including child support, health insurance, life insurance, medical notification, periods of possession, and private school tuition. The agreed final order was signed on May 19, 2015, and contained specific provisions regarding Carlos's anticipated relocation to Puerto Rico. The agreed final order also provided Carlos's periods of possession may not "interfere with the children's attendance at school or the children's school related activities and sports the children are participating in." The agreed final order contained no provisions regarding decisions as to the activities and sports in which the children would participate.

Before the agreed final order and the Mediated Settlement Agreement, Carlos and Victoria were still living together, and the children participated in numerous seasonal sports and extracurricular activities. A.B.R. (born in 2006) and W.C.R. (born in 2008) were involved in soccer, basketball, tennis, swimming, early bird reading, archery, a young astronaut program,

chess, horseback riding, and cub scouts. A.B.R. was also taking guitar lessons, and W.C.R. was being tutored. K.R.R. (born in 2011) was involved in swimming, ballet, and piano.

After the Mediated Settlement Agreement and agreed final order, Carlos and Victoria finalized their divorce, Carlos moved to Puerto Rico, Carlos's and Victoria's relationship did not improve, and Carlos's routine with the children changed. Furthermore, after the agreed order and Mediated Settlement Agreement, the children remained involved in several of the same activities and sports, stopped participating in some activities and sports, and took up others. A.B.R. and W.C.R.'s basketball season started in November or December 2015, and ended on March 27, 2016. A.B.R. and W.C.R. would play basketball at invitational tournaments for sometimes up to eight hours a day on the weekend. Some of those weekends fell on Carlos's weekends with the children. Victoria would also be present at games, and she and Carlos disagreed about what activities the children should be involved in. Displeased with these circumstances, Carlos sought legal advice in March 2016 about the issues arising after the parties executed the Mediated Settlement Agreement. His hope was to "clean up a lot of problems" in the Mediated Settlement Agreement.

On March 28, 2016, Carlos filed a petition to modify the agreed final order. Carlos alleged "[t]he circumstances of the children, a conservator, or other party affected by the agreed order had materially and substantially changed since the date of the signing of the mediated settlement agreement on which the order to be modified [wa]s based." In his Fifth Amended Petition to Modify, his live pleading, Carlos requested fourteen modifications to the agreed final order. To provide a few examples, Carlos requested modifications regarding the children's exclusive psychological and psychiatric treatment by a particular doctor, the children's passports and travel, a "right of first refusal" to have access to the children if Victoria was unable to exercise her possessory rights for an overnight period, an order that Victoria submit to a psychological evaluation, a requirement that the children not be left alone with Victoria overnight, and limiting

Victoria's ability to make decisions that would involve the children in activities that would interfere with Carlos's periods of possession. Carlos also requested an award of his attorney's fees. Victoria generally denied Carlos's allegations and requested an award of her attorney's fees. Victoria also filed a conditional counter-petition to modify the agreed final order, but only if the trial court found there was a material and substantial change of circumstances authorizing the trial court to modify the parties' agreed final order.

The trial court heard the case beginning on October 3, 2016, and ending on October 7, 2016. At the hearing, several witnesses (including Victoria and Carlos) testified, and numerous exhibits were admitted into evidence. The following week, the trial court orally rendered rulings on the parties' requests for relief. On April 6, 2017, after two motion-to-enter hearings, the trial court signed an order modifying the agreed final order. Victoria timely filed a motion to modify, a motion for new trial, and a request for findings of fact and conclusions of law. The trial court issued findings of fact and conclusions of law, and then entered first amended findings of fact and conclusions of law, as well as additional findings of fact at Victoria's request. The trial court then separately entered second amended findings of fact and conclusions of law and signed a final nunc pro tunc modification order (or "the modification order").

The modification order consisted of fifty-two pages altering the parties' agreed final order. The modification order contained a geographical restriction, a designation of an exclusive person to provide mental health services to the children, and orders regarding possession, extracurricular and sports activities, electronic communication, the children's travel and passports, child support, health insurance, life insurance, private school tuition, loving and caring, children's bill of rights, children's uniforms, a co-parenting website, and parent counseling. In the modification order, the trial court specifically denied several of the parties' requests, required Carlos to post a cash bond in the amount of $50,000, and awarded Victoria $150,000 in attorney's fees.

The trial court's second amended findings of fact and conclusions of law contained over one hundred twenty findings of fact and conclusions of law, most of which found that the specific provisions of the modification order were in the children's best interest. In its conclusions of law, the trial court determined, "The circumstances of the children or a conservator have materially and substantially changed since March 4, 2015 when the parties entered into their binding Mediated Settlement Agreement." Both Carlos and Victoria have appealed the modification order. We begin by addressing Victoria's appeal.

### VICTORIA'S APPEAL

Victoria argues: (1) there was no material and substantial change in circumstances that authorized the trial court to modify the agreed final order; (2) the trial court erred by turning exclusive decision-making authority regarding the children's mental health over to a psychologist and allowing that psychologist to designate a substitute psychologist; (3) the modifications to the agreed final order are not in the children's best interest; (4) the trial court improperly authorized a trial amendment to Carlos's pleadings; and (5) there is legally and factually insufficient evidence "to support Findings of Fact Nos. 9, 14-19, 21-21 [sic], 38-40, 51-60, 62-63, 67-71, 76-77, 91, 93, 103-106, 113-114, 117-118." We address Victoria's first issue.

### A. Material & Substantial Change in Circumstances

#### 1. *Standard of Review*

We review a modification order for an abuse of discretion. *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Id.* "Because it has no discretion when determining the applicable law, the trial court also abuses its discretion when it clearly fails to analyze and determine the law correctly or applies the law incorrectly to the facts." *Id.* at 738. "Under an abuse of discretion standard, legal and factual insufficiency are

not independent grounds for asserting error but are relevant factors in assessing whether a trial court abused its discretion." *Id.* at 737. And under an abuse of discretion standard, we may not interfere with the trial court's decision "so long as some evidence of a substantive and probative character supports it and the ruling comports with the law." *In re C.M.G.*, 339 S.W.3d 317, 319 (Tex. App.—Amarillo 2011, no pet.).

### 2. *Applicable Law*

As previously noted, the modification order alters an agreed final order in a custody proceeding. Such an agreed order is contractual, final, and "res judicata of the best interests of a minor child as to conditions then existing." *Knowles v. Grimes*, 437 S.W.2d 816, 817 (Tex. 1969); *see Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "As a matter of public policy, there should be a high degree of stability in the home and surroundings of a young child, and, in the absence of materially changed conditions, the disturbing influence of re-litigation should be discouraged." *Knowles*, 437 S.W.2d at 817. Thus, in modification suits, "the threshold inquiry is whether the moving party has met the burden of demonstrating a material and substantial change." *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.).

Section 156.101 of the Texas Family Code limits when a trial court may modify such a final order regarding conservatorship and possession of a child:

> (a) The court may modify an order that provides for the appointment of a conservator of a child, that provides the terms and conditions of conservatorship, or that provides for the possession of or access to a child if modification would be in the best interest of the child and:
>
> > (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
> >
> > > (A) the date of the rendition of the order; or
> > > (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based.

*See* TEX. FAM. CODE. ANN. § 156.101(a) (West 2014). The plain language of section 156.101 requires a party to establish three elements before a trial court may modify such an order under that section: there must be (1) changed circumstances that are (2) material and substantial, and (3) modification must be in the best interest of the child. *Id.*; *see Zeifman v. Michels*, 212 S.W.3d 582, 593-94 & n.1 (Tex. App.—Austin 2006, pet. denied); *see also State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 270 (Tex. 2017) (stating we construe statutes according to their plain language). These elements may be proven by direct or circumstantial elements. *See Wright v. Wright*, 610 S.W.2d 553, 554-55 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).

Because Victoria does not challenge the "best interest" element in her first issue, we elaborate here only on section 156.101(a)(1)'s other two elements. First, a party seeking to modify a prior final order under section 156.101(a)(1) must show there is an actual change in circumstances. *See* TEX. FAM. CODE. ANN. § 156.101(a)(1). In determining whether there has been a change of circumstances, "most courts require a comparison between the original circumstances of the child and the affected parties at the time the existing order was entered with their circumstances at the time the modification is sought." *Zeifman*, 212 S.W.3d at 594 n.1. "Thus, the record must contain both historical and current evidence of the relevant circumstances. Without both sets of data, the court has nothing to compare and cannot determine whether a change has occurred." *Id.* Additionally, "[i]f a circumstance was contemplated at the time of an original agreement, its eventuality is not a changed circumstance, but is instead an anticipated circumstance that cannot be evidence of a material or substantial change of circumstances." *In re N.T.P.*, 402 S.W.3d 13, 19 (Tex. App.—San Antonio 2012, no pet.).

Second, the changed circumstances must be material and substantial. *See* TEX. FAM. CODE. ANN. § 156.101(a)(1). Determining whether changed circumstances are material and substantial under section 156.101 is fact-specific and is "not guided by rigid rules." *Zeifman*, 212 S.W.3d at

593. Some examples of changed circumstances that are material and substantial under section 156.101(a) are a parent's remarriage; a change in the child's age that changes the child's needs; a parent's relocation, depending upon the distance of the relocation; a parent's poisoning the mind of a child and preventing the child from associating favorably with the other parent; a parent's abuse of drugs and alcohol; and a parent's abuse or extreme neglect of a child. *See id.*[1] Some examples of changed circumstances that are not material or substantial are a temporary loss of contact with the child; a parent's decreased participation in raising a child; a parent's desire, but inability, to have a child travel internationally; and a parent's desire to spend more time with a child. *See Karanja*, 546 S.W.3d at 741-42; *In re C.H.C.*, 392 S.W.3d 347, 351-52 (Tex. App.—Dallas 2013, no pet.) (mere desire to spend more time with a child is insufficient); *Kelly v. Tex. Dep't of Family & Protective Servs.*, No. 03-11-00670-CV, 2012 WL 5476840, at *5 (Tex. App.—Austin Nov. 9, 2012, no pet.) (mem. op.) (holding in suit to modify grandparent access that a change from supervised visits to no contact for four months is insufficient); *Zeifman*, 212 S.W.3d at 593-94 (listing additional examples).

### 3. *Whether the Trial Court Abused Its Discretion*

Although the trial court concluded the circumstances of the children or a parent had materially and substantially changed since the parties executed the Mediated Settlement Agreement, the trial court did not specify the basis for that conclusion, which is more properly characterized as finding of fact on an ultimate issue.[2] In her appellant's brief, Victoria argues there

---

[1] *See also In re A.G.*, 531 S.W.3d 329, 334 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re J.R.P.*, 526 S.W.3d 770, 779 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re H.D.C.*, 474 S.W.3d 758, 766 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *In re T.M.P.*, 417 S.W.3d at 564; *Arredondo v. Betancourt*, 383 S.W.3d 730, 738-39 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *In re A.L.E.*, 279 S.W.3d 424, 428-29 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Wright*, 610 S.W.2d at 555; *Leonard v. Leonard*, 218 S.W.2d 296, 301 (Tex. Civ. App.—San Antonio 1949, no writ).

[2] In its conclusions of law, the trial court noted, "Any item described in this document as a Conclusion of Law that is actually a Finding of Fact shall be deemed a Finding of Fact."

is no evidence to support the trial court's finding of materially and substantially changed circumstances. She states the only evidence of changed circumstances is Carlos's relocation to Puerto Rico, which was contemplated before the parties executed the Mediated Settlement Agreement. In his appellee's brief, Carlos affirmatively states his relocation to Puerto Rico was not the changed circumstance upon which the trial court's finding was predicated. Carlos instead argues there is evidence of three changed circumstances that are material and substantial: (1) Victoria began interfering with his ability to spend time with and contact the children; (2) Victoria's and his exchanging of the children's passports "caused a great deal of conflict between" Victoria and Carlos; and (3) Victoria increased the children's time commitments to sports and extracurricular activities. In her reply brief, Victoria responds that even if this is evidence of materially and substantially changed circumstances, the specific changed circumstances would not authorize the trial court to modify the agreed final order *ad infinitum*, such as a modification regarding the children's psychiatric and psychological care.

### a. Carlos's Relocation to Puerto Rico

We note at the outset that the evidence shows Carlos and Victoria were living together at the time the parties executed the Mediated Settlement, but then Carlos moved to Puerto Rico. Although Carlos claims his move to Puerto Rico was not the trial court's reason for finding materially and substantially changed circumstances, the dissent relies on evidence that Carlos and Victoria were no longer living together after the Mediated Settlement Agreement, and we must affirm the trial court's finding if there is any evidence of a substantive and probative character to support the finding. *See In re C.M.G.*, 339 S.W.3d at 319. As previously noted, a parent's relocation may, depending upon the distance, constitute a material and substantial change in circumstances. Because the agreed final order expressly addresses Carlos's relocation to Puerto Rico, the record establishes the parties anticipated Carlos's relocation to Puerto Rico when they

executed the Mediated Settlement Agreement. Carlos's relocation to Puerto Rico therefore cannot constitute a material and substantial change of circumstances. *See In re N.T.P.*, 402 S.W.3d at 19. Consequently, the evidence that Carlos moved to Puerto Rico does not support the trial court's finding of materially and substantially changed circumstances. *See id.* We therefore turn to the evidence Carlos argues supports the trial court's finding of materially and substantially changed circumstances.

> b. *Victoria's Interference with Carlos's Ability to Contact and Spend Quality Time with the Children without Victoria's Presence*

Carlos relies on evidence that he argues shows Victoria interfered with his ability to contact the children and spend quality time with them without her presence. Carlos testified at trial that before the Mediated Settlement Agreement, he had spent a lot of time alone with the children on Saturdays and part of Sunday. He testified he and the children had a routine of daily events, such as going to IHOP in the morning, then either to archery or horseback riding, having lunch, and "run[ning] around and do[ing] a bunch of stuff" before going back home. Carlos further testified that after he and Victoria signed the Mediated Settlement Agreement, Victoria "no longer wanted [them] to go to IHOP. She said the people that went there were dirty. She did not want [them] going to the archery or horseback riding." He also testified Victoria "would want to go to certain other things" with him and the children, such as going to lunch. According to Carlos, Victoria no longer wanted him to "put the boys to bed at night" and would stand by the door when he did so. Carlos also testified that before the Mediated Settlement Agreement, he spoke with the children on the phone "all the time" and after the Mediated Settlement Agreement, Victoria either would not answer the phone and would not call back, or would answer and not let Carlos talk to the children.

Carlos argues this evidence shows that post-Mediated Settlement Agreement changes "threatened the children's ability to maintain a close relationship with" him and deprived the children of their "opportunity to favorably associate with" him. However, the trial court made no such specific findings. There is no evidence showing what effect these changes had on the children and how these changes negatively affected the children's relationship with Carlos. There is also no evidence showing that before the Mediated Settlement Agreement, Victoria was not present when the children were with Carlos at various activities. *See Zeifman*, 212 S.W.3d at 594 n.1.

Furthermore, the agreed final order, which was based on the Mediated Settlement Agreement, provided the parties' respective periods of possession of the children. Carlos's desire to spend more time with the children (either in person or on the phone or during Victoria's periods of possession) and disagreements about the children eating at IHOP, participating in archery, and going horseback riding, do not constitute materially and substantially changed circumstances. *See Karanja*, 546 S.W.3d at 741-42; *In re C.H.C.*, 392 S.W.3d at 351-52. We therefore hold the above-described evidence does not support the trial court's finding of materially and substantially changed circumstances.

### c. *Conflict Regarding the Exchange of the Children's Passports*

Carlos also relies on evidence showing there was a conflict between him and Victoria about exchanging the children's passports and Carlos had to file a motion to enforce the agreed final order. The agreed final order contained a section titled "Travel Provisions for Out of the Country," which establishes that the parties contemplated the children's travel outside of the country. Furthermore, a parent's desire to travel internationally with the children and complications therewith do not constitute materially and substantially changed circumstances. *See Karanja*, 546 S.W.3d at 741-42. This evidence does not support the trial court's finding.

### d. *Excessive Involvement in Sports & Extracurricular Activities*

Carlos also argues the amount of time the children were involved in seasonal sports and extracurricular activities significantly increased after the Mediated Settlement Agreement. Carlos testified the children were involved in various activities at the time of the Mediated Settlement Agreement, but there was a "drastic change" after the Mediated Settlement Agreement. Carlos explained that before the Mediated Settlement Agreement, A.B.R. and W.C.R. had one hour of basketball practice and one game a week. Carlos further testified that after the Mediated Settlement Agreement, A.B.R. and W.C.R. were involved in sports seven days a week. He also stated that after the Mediated Settlement Agreement, K.R.R. took diving lessons for two to three hours every week, ballet lessons for an hour a week, and a reading class for two hours each week. Carlos testified the children are now "booked solid with sports and activities . . . [s]o we don't get the alone time that we used to get where we could just talk about things." In his appellee's brief, Carlos acknowledges some evidence shows the children were involved in more activities before the Mediated Settlement Agreement, but argues "it is the number of *hours*, not the number of *activities*, that interferes with Carlos's possession time."

It is undisputed that the children were involved in many of the same sports and extracurricular activities both before and after the Mediated Settlement Agreement, and much of their time spent in sports and extracurricular activities was during Victoria's periods of possession. In the agreed final order, Carlos agreed to a provision that expressly states his periods of possession shall "not interfere with the children's attendance at school or the children's school related activities and sports the children are participating in." Although the Mediated Settlement Agreement contains no provision for how Carlos and Victoria would decide what sports and extracurricular activities in which the children should be involved, Carlos expressly consented to prioritizing the children's involvement in sports over his subjective preferences for the activities

he wanted the children to be involved in during his periods of possession. Thus, the record establishes the parties expressly contemplated a conflict—and agreed how they would resolve any such conflict—between Carlos's desires for his periods of possession and the children's involvement in sports and extracurricular activities. This evidence therefore does not support the trial court's finding of materially and substantially changed circumstances. *See In re N.T.P.*, 402 S.W.3d at 19.

Furthermore, a significant number of hours that children spend involved in seasonal sports and extracurricular activities is not comparable to changed circumstances that courts have found to be material and substantial, such as a parent's remarriage, distant relocation, severe neglect or abuse, drug or alcohol abuse, and poisoning a child's mind against another parent. Instead, an increase in the number of hours that children spend involved in seasonal extracurricular activities is more similar to changes courts have held are not material and substantial, such as minor loss of contact with the child; a parent's decreased participation in raising a child; a parent's desire, but inability, to have a child travel internationally; and a parent's desire to spend more time with a child. *See Karanja*, 546 S.W.3d at 741-42; *In re C.H.C.*, 392 S.W.3d at 351-52; *Kelly*, 2012 WL 5476840, at *5; *Zeifman*, 212 S.W.3d at 593-94.

Although we decline to hold that a significant increase in the amount of time a child spends on sports and extracurricular activities could never constitute a material and substantial change in circumstances, the evidence in this case does not support such a finding. *See, e.g.*, *Rooney v. Rooney*, No. 14-10-01007-CV, 2011 WL 3684618, at *4 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.) (holding involvement in more activities, in addition to other changes, was material and substantial to modify child support amount because it affected costs to address the children's needs). Carlos testified, and the trial court found, that the children were involved in too many sports and activities, and this involvement had a significant effect on Carlos's ability to

enjoy quality time and effectively communicate with the children. Carlos's chief complaint at trial was, specifically, the amount of time A.B.R. and W.C.R. spent playing basketball.[3] But the undisputed evidence showed A.B.R. and W.C.R.'s basketball season lasted only from December to March. Furthermore, the trial court made no findings, and there is no evidence showing, that the children's involvement in sports and extracurricular activities adversely affected the children. Instead, the evidence showed the children love their sports and activities, A.B.R. and W.C.R.'s sports schedules do not interfere with their school work, and A.B.R. and W.C.R.'s peers play on the same teams and have the same schedule. On this record, we hold the increase in the number of hours A.B.R. and W.C.R. spent involved in sports and other extracurricular activities is not a material and substantial change of circumstances that justifies "the disturbing influence of re-litigation" and that overcomes the strong public policy of requiring "a high degree of stability in the home and surroundings of a young child." *See Knowles*, 437 S.W.2d at 817.

*e. The Parties' Divorce & the Children's Relationship with their Therapist*

None of the evidence that Carlos relies on in his appellee's brief supports the trial court's finding of materially and substantially changed circumstances. Nevertheless, as we have noted, we must affirm the trial court's finding if there is any evidence of a substantive and probative character to support the finding. *See In re C.M.G.*, 339 S.W.3d at 319. The dissent identifies additional evidence that might appear to support the trial court's finding: (1) evidence indicating the parties temporarily agreed not to get divorced; and (2) evidence that the children began to distrust their therapist.

Regarding the parties' divorce, the evidence shows that Victoria's petition for divorce would be nonsuited as part of the Mediated Settlement Agreement. Victoria testified that after a

---

[3] We note there is no evidence showing the amount of time K.R.R. spent in activities before the Mediated Settlement Agreement.

conversation with the children's therapist, she concluded "the only way to protect [the] children was to stay married to Carlos until they were at least in high school." We reemphasize that (1) to prove a material and substantial change in circumstances, we must compare evidence of the circumstances existing at the time the parties executed the Mediated Settlement Agreement and the evidence of those circumstances after the Mediated Settlement Agreement was executed, and (2) changed circumstances anticipated at the time of the Mediated Settlement Agreement cannot constitute a material and substantial change in circumstances as a matter of law. *See In re N.T.P.*, 402 S.W.3d at 19; *Zeifman*, 212 S.W.3d at 594 n.1. Furthermore, the changed circumstances must be material to some aspect of the parent–child relationship that justifies changing an order affecting the parent–child relationship. *See Karanja*, 546 S.W.3d at 741-42. Although Victoria nonsuited her divorce petition in order to remain married to Carlos temporarily, Victoria and Carlos had actually separated, and Victoria was contemplating a divorce in the future. The parties' separation, and the contemplated possibility of a divorce in the future, was memorialized in the agreed order's provision imposing a geographical restriction. The agreed order stated the geographical restriction was made pursuant to Texas's public policy regarding parents "raising their child[ren] after the[y] have separated or dissolved their marriage." And although the parties' finalization of a divorce after their actual separation may be a substantial change as to the parties individually and in their relationship with each other, there is no evidence showing how the finalization of the divorce was material to any aspect of the parent–child relationship not already contemplated when the parties had separated and executed the Mediated Settlement Agreement. *See id.*

We similarly hold the evidence of the children's communication difficulties with their therapist is not evidence of a material and substantial change in circumstances. Although our inquiry is not guided by rigid rules, our determination of whether there is a material and substantial change in circumstances is governed by an overarching public policy principle: the change in

circumstances must justify "the disturbing influence of re-litigation." *See Knowles*, 437 S.W.2d at 817; *Zeifman*, 212 S.W.3d at 593. The children's therapist, Dr. Joann Murphey, testified only that the children are "getting closed down and mistrusting." She did not testify about how the particular communication difficulties affected the children or the effectiveness of their therapy. Without more, we cannot say a child's mere communication difficulties with the child's therapist justify the disturbing influence of relitigating child-custody issues. *See Knowles*, 437 S.W.2d at 817.

### 4. Conclusion as to Materially & Substantially Changed Circumstances

We have reviewed the entire record and have found no other evidence showing a material and substantial change in circumstances. Because no evidence of a probative and substantive character supports the trial court's finding of materially and substantially changed circumstances, we hold the trial court abused its discretion.[4] We therefore reverse the trial court's order modifying the agreed final order and render judgment denying Carlos's petition to modify and Victoria's conditional counterpetition to modify the agreed final order. *See Karanja*, 546 S.W.3d at 742; *In re C.H.C.*, 392 S.W.3d at 352; *Zeifman*, 212 S.W.3d at 596.

### B. Victoria's Remaining Issues

Victoria's remaining issues challenge other trial court rulings, findings, and parts of the modification order. Because we reverse and render judgment as to the trial court's modifications of the agreed final order, and Victoria's remaining issues would not entitle her to any greater relief, we need not address those issues. *See* TEX. R. APP. P. 47.1. We therefore turn to addressing the issues in Carlos's cross-appeal.

---

[4] Alternatively, even if the additional time A.B.R. and W.C.R. played basketball was a material and substantial change of circumstances, this changed circumstance was not sufficiently connected to all of the modifications the trial court made to the agreed order. *See Karanja*, 546 S.W.3d at 741-42 ("[T]he relief the trial court may grant must be somehow connected to the changed circumstance. For example, a remarriage may require some changes but does not mean that the trial court may now modify other provisions in the original divorce decree unrelated to the remarriage.").

**CARLOS'S CROSS-APPEAL**

In his cross-appeal, Carlos challenges the trial court's order that he pay a $50,000 bond into the registry of the court and the award of $150,000 in attorney's fees to Victoria.

**A. Bond**

Carlos argues the trial court erred by ordering him to pay a $50,000 cash bond into the registry of the court. The modification order provided the cash bond could become payable to Victoria if Carlos filed a further petition for modification and would be held until all of the children had graduated from high school or reached the age of eighteen. Victoria requested that the trial court order Carlos to post a $50,000 bond "[b]ased upon [Carlos]'s threats of litigation and past litigious conduct" and the purpose of the bond was for Victoria's attorney's fees "in the event [Carlos] files a subsequent modification action." During trial, Victoria testified Carlos often threatened to sue people and had threatened to continue suing her to squander her resources.

Carlos complains that Victoria's pleadings requested relief to address a hypothetical issue and the trial court lacked jurisdiction to grant the requested relief for an issue that was not ripe. "Ripeness is a component of subject-matter jurisdiction." *In re Coppola*, 535 S.W.3d 506, 510 (Tex. 2017) (orig. proceeding). Ripeness is a threshold issue "that emphasizes the need for a concrete injury for a justiciable claim to be presented." *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011). In evaluating ripeness, we consider whether the claimed injury has occurred or is likely to occur, and is not merely contingent or remote. *Id.* If a party does not demonstrate a reasonable likelihood that a claim will soon ripen, "the case must be dismissed." *Id.*

Victoria's request was based expressly on a possible future injury, rather than an existing injury, and thus she bore the burden of demonstrating a reasonable likelihood that her claim would soon ripen. *See id.* In its second amended findings of fact and conclusions of law, which replaced the trial court's prior findings of fact and conclusions of law, the trial court made no finding that

it was reasonably likely Carlos would file a subsequent petition to modify. *See Bos v. Smith*, No. 16-0341, 2018 WL 2749714, at \*10 (Tex. June 8, 2018) (stating "[a]mended pleadings supersede prior pleadings"); *Waters v. Yockey*, 144 Tex. 592, 594, 192 S.W.2d 769, 769-70 (1946) (holding issuing new set of findings clearly shows trial court's intent to substitute new findings for first set of filings).[5] Because Victoria did not establish an existing injury or a reasonable likelihood that her claim would soon ripen, the trial court erred by requiring Carlos to pay $50,000 into the registry of the court, and Victoria's request for a cash bond "must be dismissed." *See Robinson*, 353 S.W.3d at 755.

Victoria contends the trial court has authority to require a parent to post a bond or security under Title 5 of the Texas Family Code. But the provisions of Title 5 on which Carlos relies require predicate findings and that the bond be to secure performance with the trial court's order. *See* Tex. Fam. Code. Ann. § 153.011 (West 2014) (permitting bond to secure compliance with trial court's order, if the trial court finds party might violate court order); *id.* § 153.503 (permitting bond if trial court finds measures are necessary "to protect a child from international abduction"); *id.* § 157.109 (permitting bond if trial court finds past denial of possession or access or if employer is not subject to court's jurisdiction). Here, there are no predicate findings supporting the bond, and the bond is not related to securing Carlos's performance with any part of the modification order. We conclude the trial court erred, reverse the part of the modification order requiring Carlos to pay a $50,000, and render judgment dismissing Victoria's request that Carlos post a bond for lack of subject matter jurisdiction. *See Robinson*, 353 S.W.3d at 755.

---

[5] Even if we were to consider the "Additional Findings of Fact" that the trial court made before the second amended findings of fact and conclusions of law, the findings were insufficient. The trial court found only that Carlos "may initiate more litigation pertaining to the parties' children as a way to harass Victoria." The trial court did not find there was a reasonable likelihood that Carlos would do so. *See Robinson*, 353 S.W.3d at 755.

**B. Attorney's Fees**

Carlos also argues the trial court abused its discretion by awarding Victoria $150,000 in attorney's fees under section 106.002 of the Texas Family Code because she was not the prevailing party and there was no other good cause for awarding her attorney's fees. Section 106.002 of the Texas Family Code provides:

> (a) In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.

> (b) A judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt.

TEX. FAM. CODE. ANN. § 106.002 (West 2014). Section 106.002 is not a "prevailing party" statute that requires a party to prevail on her claims before being awarded attorney's fees because it is often difficult in family law cases to determine which party has prevailed. *See Coburn v. Moreland*, 433 S.W.3d 809, 840 (Tex. App.—Austin 2014, no pet.). This case is no different. Although the trial court granted Carlos's petition to modify in several respects, Victoria also prevailed in part. In light of our decision reversing the trial court's order, the trial court's determination as to attorney's fees might be different on remand. *See Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996). The trial court should have an opportunity to reconsider the award of attorney's fees in light of our judgment. *See id.* at 368-69.

CONCLUSION

We reverse the trial court's modification order in its entirety. We render judgment denying Carlos's petition to modify, denying Victoria's cross-petition to modify, and dismissing Victoria's request to have Carlos post a $50,000 cash bond. The case is remanded for the trial court to reconsider the issue of attorney's fees.

Luz Elena D. Chapa, Justice