**Order issued August 24, 2021**



In The

# Court of Appeals

### For The

# First District of Texas

————————————

### NO. 01-19-00713-CV

————————————

## WILLIAM FORSSBERG, Appellant

## V.

## LISA HOWARD, Appellees

---

### On Appeal from the 507th District Court
### Harris County, Texas
### Trial Court Case No. 2015-75176

---

### ORDER OF ABATEMENT

Appellant, William Forssberg, and appellee, Lisa Howard, divorced in 2016.

The final divorce decree set Forssberg's child support obligation for their two minor

children at $1,950 per month. Forssberg and Howard filed cross-motions to modify

Forssberg's support obligation, and the Texas Office of Attorney General ("OAG")

moved to confirm Forssberg's child support arrearage. The trial court ordered Forssberg to pay $1,950 per month in child support and to reimburse Howard for the children's monthly health insurance costs. The trial court also confirmed child support arrearages and medical support arrearages.

In two issues on appeal, Forssberg contends that (1) the trial court erroneously failed to file findings of fact and conclusions of law, which prevented him from properly presenting his case to this Court; and (2) the trial court abused its discretion in calculating Forssberg's child support obligations.

We abate the appeal and remand the case to the trial court.

## Background

Forssberg, a native of Sweden, and Howard, a native of the United States, married in 2003. They married in the United States but lived in Sweden at the time. They have two sons, one born in August 2004 and one born in June 2008. Both children are still minors. In 2014, the parties moved to the Houston area. At the time, Forssberg was employed by Hewlett Packard, and he obtained an L-1 visa that allowed him to live and work in the United States.

Howard filed for divorce in Harris County in December 2015. During the divorce proceedings, pursuant to agreed temporary orders, Forssberg paid $1,000 per month in child support to Howard. The trial court signed an agreed final decree of divorce on November 17, 2016. The trial court appointed both parents as joint

managing conservators of the children. The trial court ordered Forssberg to pay $1,950 per month in child support to Howard and to maintain health insurance for the children "[a]s additional child support."

Howard filed a motion to modify a year later, alleging that the circumstances of the children or a conservator had materially and substantially changed since the rendition of the divorce decree. Among other requested modifications, Howard requested that the trial court increase Forssberg's monthly child support obligations. She later supplemented her motion to modify and alleged that Forssberg had earning potential of $150,000 per year and therefore his child support obligation should be increased to $2,137.50. She further requested that the trial court order Forssberg to reimburse her $302 per month for the cost of maintaining the children's health insurance.

In 2016, Forssberg lost his job with Hewlett Packard. Unable to retain his visa, he moved back to Sweden. In November 2017, Forssberg filed with Swedish authorities an application for modification of the divorce decree pursuant to the Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance. Forssberg sought a decrease in his child support obligations due to a change in his income. In a "Financial Circumstances Form," Forssberg stated that he was currently employed by a company called SmartInfo Sweden AB and that his gross monthly earnings were 35,000 Swedish Krona, or approximately

$4,176.[1] He also stated that Sweden deducted 8,708 Krona per month in "National/Federal tax." According to a "Salary Statement" from SmartInfo, Forssberg's net monthly earnings were 26,292 Swedish Krona, or $3,137. Forssberg provided information about his assets, debts, and monthly expenses and stated that he had an additional 5,346 Krona in monthly "income from securities/floating capital." According to Howard, the Swedish authorities did not reduce Forssberg's child support payments, but instead extended them until the children are 21.

In September 2018, the OAG filed a "Motion to Confirm Support Arrearage and Suit for Modification of Support Order." The OAG alleged that, since the divorce decree, Forssberg was $37,102.49 in arrears in his child support obligations and the trial court should enter judgment on the arrearage. The OAG also requested that the trial court modify the portions of the divorce decree relating to child support and health care coverage for the children. The OAG later amended its motion to allege that over $7,000 in unreimbursed medical bills for the children had accrued, and "a tribunal ordered [Forssberg] to pay a portion of unreimbursed medical expenses," but he had not done so.

---

[1] In this same document, Forssberg stated that, as of November 14, 2017, the applicable exchange rate was 8.38 Swedish Krona to one U.S. Dollar. Forssberg also attached wage slips dated in 2017 and 2018 that reflected his gross monthly earnings had risen to 37,675 Swedish Krona.

Forssberg filed a motion to modify the divorce decree in the Harris County court in January 2019. Forssberg requested that the possession and access portions of the divorce decree be modified to include long distance travel provisions and to allow unmonitored electronic communication with the children. He alleged that his change of residence "has caused him to incur increased costs," and he requested that the increased costs necessary to exercise his periods of possession be allocated equitably between him and Howard. He further requested that his child support obligations be decreased to $650 per month[2] and that Howard should be financially responsible for obtaining and maintaining health insurance for the children.

The trial court held a hearing on the parties' motions to modify the divorce decree. The parties presented evidence relating to Forssberg's employment with Hewlett Packard and his approximate salary at the time of the divorce decree, as well as evidence concerning his post-divorce move to Sweden. The parties testified concerning Forssberg's current employment and salary, businesses in Sweden in which he owns an interest, dividends and income interest that he receives, positions that he holds on the boards of directors of several Swedish companies, and loans he

---

[2] In June 2019, Forssberg supplemented his motion to modify with a document setting out his requested relief. He alleged that he earned 37,675 Swedish Krona monthly, and 9,266 was withheld per month in taxes. At the then-current exchange rate of 9.48 Swedish Krona to $1.00, his average monthly income was $2,995.56. He further alleged that he received an average of $638.61 per month in dividends, and that this amount added to his average monthly income equaled $3,634.17.

has obtained from friends and his parents. Howard estimated that Forssberg's total monthly income—from his employment and from other sources—was around $11,000, but Forssberg had also not provided all his financial information to her. She testified that she believed Forssberg was intentionally underemployed and his child support payments should be based on his earning potential, not his current income. Forssberg, by contrast, testified that his annual salary was approximately $48,000, his net monthly income was around $3,600, and although he would like to earn more, due to his age and the lack of contacts in Sweden, he could not do so. Howard requested that the trial court upwardly modify Forssberg's child support obligation, whereas Forssberg requested that the trial court reduce it.

The trial court modified the divorce decree to grant Howard the exclusive right to designate the children's primary residence. The trial court ordered that Forssberg was to bear the costs of travel for the children, including round-trip airline tickets. The trial court ordered Forssberg to pay $1,950 in child support, an amount unchanged from the final divorce decree. The trial court modified the portion of the divorce decree concerning medical support for the children, ordering Howard to maintain health insurance for the children and ordering Forssberg to pay Howard $302 per month for the cost of health insurance. With respect to child support and medical support arrearages, the trial court entered an agreed judgment against Forssberg for $7,327.04 in child support arrearages and entered judgment against

Forssberg for $3,300 for unreimbursed medical expenses and health insurance premiums.

Forssberg timely filed a request for findings of fact and conclusions of law. He specifically requested "that the Court's findings and conclusions include the income, valuation, calculation of child support, liabilities, claims, and offsets on which disputed evidence has been presented." After the trial court did not file findings and conclusions, Forssberg filed a timely notice of past-due findings and conclusions. It is undisputed that the trial court never filed findings and conclusions. This appeal followed.

**Discussion**

In his first issue, Forssberg argues that the trial court erred by failing to file findings of fact and conclusions of law in response to his timely request. Forssberg argues that this error was harmful because the parties presented disputed evidence concerning his income and net resources, the trial court's decision not to modify the monthly support obligation did not comport with either of the parties' evidence, and the failure to file findings and conclusions prevented him from effectively challenging the trial court's calculation of his child support obligation.

**A.     *Modification of Child Support***

Family Code section 156.401 sets out the grounds for modifying a child support order. This section provides:

7

(a) Except as provided by Subsection (a-1), (a-2), or (b), the court may modify an order that provides for the support of a child, including an order for health care coverage under Section 154.182 or an order for dental care coverage under Section 154.1825, if:

    (1) the circumstances of the child or a person affected by the order have materially and substantially changed since the earlier of:

        (A) the date of the order's rendition; or

        (B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based; or

    (2) it has been three years since the order was rendered or last modified and the monthly amount of the child support award under the order differs by either 20 percent or $100 from the amount that would be awarded in accordance with the child support guidelines.

TEX. FAM. CODE § 156.401(a). The trial court may consider the statutory child support guidelines in determining whether a material or substantial change in circumstances has occurred that warrants a modification of the existing child support order "if the modification is in the best interest of the child." *Id.* § 156.402(a); *In re A.M.P.*, 368 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("The amount of a periodic child support payment established by the child support guidelines in effect in this state at the time of the hearing is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child."). The court may also consider other relevant evidence in addition to the factors listed in the child support guidelines. *Rumscheidt*

8

*v. Rumscheidt*, 362 S.W.3d 661, 666 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see* TEX. FAM. CODE § 156.402(b) (providing same); *Brejon v. Johnson*, 314 S.W.3d 26, 30–31 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("[A] court's consideration of the child-support guidelines in a modification proceeding is discretionary, not mandatory.").

To determine whether a material and substantial change in circumstances has occurred, the court must compare the financial circumstances of the child and the affected parties at the time the original order was entered with their financial circumstances at the time of the hearing on the modification request. *In re N.T.P.*, 402 S.W.3d 13, 19 (Tex. App.—San Antonio 2012, no pet.); *In re A.M.P.*, 368 S.W.3d at 846. Without evidence of the parties' financial circumstances at the time of the original order or at the time of the modification hearing, the trial court cannot make a determination that there has been a material and substantial change. *In re N.T.P.*, 402 S.W.3d at 19. A change in the obligor's income can constitute a material and substantial change. *Reagins v. Walker*, 524 S.W.3d 757, 761 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The movant bears the burden to show a material and substantial change in circumstances. *Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see Rumscheidt*, 362 S.W.3d at 667. "Upon a showing of the requisite changed circumstances, the trial court may alter the child-support obligations." *In re A.M.P.*, 368 S.W.3d at 846.

Under the Family Code, net resources for the purpose of determining child support liability include wage and salary income and other compensation for personal services; interest, dividends, and royalty income; self-employment income; net rental income; and "all other income actually being received." TEX. FAM. CODE § 154.062(a)–(b). Section 152.062(d) requires the trial court to deduct several items from an obligor's resources to determine the net resources available for child support, including state and federal income taxes and expenses for the cost of the child's health and dental insurance ordered by the court. *Id.* § 154.062(d); *see id.* § 154.064 ("The guidelines for support of a child are based on the assumption that the court will order the obligor to provide medical support and dental support for the child in addition to the amount of child support calculated in accordance with those guidelines."). Under the child support guidelines, when the obligor has two children, the court shall presumptively set the obligor's child support obligation at 25% of his net resources. *Id.* § 154.125(b).

"A parent who is qualified to obtain gainful employment cannot evade his or her child support obligation by voluntarily remaining unemployed or underemployed." *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011); *see* TEX. FAM. CODE § 154.066(a) (providing that if obligor's actual income is significantly less than what obligor could earn because of intentional unemployment or underemployment, court may apply child support guidelines to earning potential of obligor). The

determination of whether to set child support based on the obligor's earning potential, as opposed to actual earnings, must be made on a case-by-case basis. *Iliff*, 339 S.W.3d at 82. Once the obligor offers proof of his current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. *Id.* The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Id.* "Trial courts should be cautious of setting child support based on earning potential in every case where an obligor makes less money than he or she has in the past." *Id.* The trial court, as the fact finder, "has latitude to consider the testimony and evidence to make the necessary determinations." *Id.* The trial court must make a finding of intentional unemployment or underemployment, and its decision to base child support on earnings potential, instead of actual earnings, must be supported by the record. *Id.*

A trial court has discretion to set child support within the statutory parameters set out in the Texas Family Code. *Id.* at 78; *In re A.M.P.*, 368 S.W.3d at 846 ("Trial courts have broad discretion to determine and modify the amount of child support that a parent must pay."). We will not disturb a court's child support order on appeal unless the complaining party can show a clear abuse of discretion. *In re N.T.P.*, 402 S.W.3d at 18. A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Iliff*, 339 S.W.3d at 78. A trial court does not have discretion to analyze or apply the law incorrectly. *Id.*

Under the abuse of discretion standard, challenges to the sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the court abused its discretion. *In re A.M.P.*, 368 S.W.3d at 846; *In re L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). We first ask whether the trial court had sufficient information on which to exercise its discretion, applying traditional sufficiency of the evidence standards, and, if so, we then ask whether the court acted reasonably in the application of its discretion. *Reagins*, 524 S.W.3d at 761. We view the evidence in the light most favorable to the trial court's ruling and indulge every legal presumption in favor of the ruling. *In re Marriage of Grossnickle*, 115 S.W.3d 238, 246 (Tex. App.—Texarkana 2003, no pet.). A trial court does not abuse its discretion if the record contains some evidence of a substantive and probative character to support the trial court's ruling. *In re A.M.P.*, 368 S.W.3d at 846. In child support decisions, the "paramount guiding principle" should always be the best interest of the child. *Iliff*, 339 S.W.3d at 81.

### B. *Findings of Fact and Conclusions of Law*

Family Code section 154.130 provides:

(a)     Without regard to Rules 296 through 299, Texas Rules of Civil Procedure, in rendering an order of child support, the court shall make the findings required by Subsection (b) if:

(1)     a party files a written request with the court before the final order is signed, but not later than 20 days after the date of rendition of the order;

(2) a party makes an oral request in open court during the hearing; or

(3) the amount of child support ordered by the court varies from the amount computed by applying the percentage guidelines under [Family Code] Section 154.125 or 154.129, as applicable.

(b) If findings are required by this section, the court shall state whether the application of the guidelines would be unjust or inappropriate and shall state the following in the child support order:

"(1) the net resources of the obligor per month are $____;

"(2) the net resources of the obligee per month are $____;

"(3) the percentage applied to the obligor's net resources for child support is ____%; and

"(4) if applicable, the specific reasons that the amount of child support per month ordered by the court varies from the amount computed by applying the percentage guidelines under Section 154.125 or 154.129, as applicable."

(c) Findings under Subsection (b)(2) are required only if evidence of the monthly net resources of the obligee has been offered.

TEX. FAM. CODE § 154.130. This section is operative only when the trial court sets or modifies child support. *In re J.D.M.*, 221 S.W.3d 740, 743 (Tex. App.—Waco 2007, no pet.); *Terry v. Terry*, 920 S.W.2d 423, 425–26 (Tex. App.—Houston [1st Dist.] 1996, no writ) (construing predecessor statute). If the trial court does not set or modify child support, findings and conclusions under the section are not mandatory, and the trial court does not err by failing to file them, even when requested to do so. *In re J.D.M.*, 221 S.W.3d at 743; *Terry*, 920 S.W.2d at 425–26; *see Rumscheidt*, 362 S.W.3d at 664 ("The trial court did not grant Mark's motion to

13

modify child support; therefore, the court was not required to make the specific statutory findings required under Family Code section 154.130.").

Under the Rules of Civil Procedure, in a bench trial, "any party may request the court to state in writing its findings of fact and conclusions of law." TEX. R. CIV. P. 296; *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam). The party must file this request within twenty days after the trial court signs the judgment. TEX. R. CIV. P. 296. The trial court shall file its findings and conclusions within twenty days after a party files a timely request. TEX. R. CIV. P. 297. If the court fails to file findings and conclusions, the requesting party, to preserve error, must file, within thirty days after making his original request, a notice of past due findings and conclusions. *Id.*; *Ad Villarai*, 519 S.W.3d at 137 (stating that party waives right to challenge court's failure to file findings if it does not file notice of past due findings as required by Rule 297). The filing of this notice extends the time for the trial court to file findings and conclusions to forty days from the date the party filed the original request. TEX. R. CIV. P. 297.

## C. *Evidence Presented at Modification Hearing*

At the hearing on the motions to modify, Howard requested that the trial court increase Forssberg's child support payments from $1,950 to $2,137. She believed that Forssberg was capable of earning $150,000 per year and was therefore capable of paying the maximum amount of child support for two children pursuant to the

statutory guidelines. At the time Forssberg left Hewlett Packard in October 2016, he had earned slightly under $100,000 for that year.[3] Howard testified that Forssberg had earned a six-figure salary for "most of [their] marriage." She could not recall a year in which Forssberg earned less than $50,000, and the most he earned was $180,000 in 2010–2013, when Forssberg worked for Hewlett Packard in Switzerland.

Howard reviewed documents that Forssberg had submitted during discovery, and she believed Forssberg currently worked for a company called SmartInfo and that he earned approximately $50,000 in 2018—or around $4,000 per month—from that company.[4] She testified that Forssberg had income from other sources as well. He owns 100% of a consulting company called WILFOR Konsult and Invest, and that company makes approximately $20,000 per year, or $1,667 per month. Forssberg also received approximately $12,600 in dividends—including from a company owned by his family and in which Forssberg has an interest—during 2018, or around $1,050 per month. Howard testified that Forssberg has positions on the boards of directors of five different companies, and she believed that he was paid for

---

[3]     When asked by the OAG how much Forssberg was making with Hewlett Packard at the time of the divorce, Howard testified, "To my knowledge, I think the last full tax I have is $134,000.00 is the last full tax I have."

[4]     Forssberg's Swedish tax return for 2018 reflected that his income—which included his salary, benefits, interest, and dividends—was $57,071. Howard did not agree that this amount reflected all Forssberg's earned income in 2018.

holding these positions. Howard had paperwork concerning only one of these companies, but in that paperwork, Forssberg admitted that he was paid $210 per month for his board position.

Howard also testified that Forssberg earns $210 per month in interest on a bank account, and $17,000 in "unknown cash deposits" were made to this account in 2018. The owner of SmartInfo, where Forssberg worked, also made two deposits into Forssberg's bank account in 2018—one in the amount of $3,824 and one in the amount of $1,930. Additionally, one of the owners of a company for which Forssberg sat on the board of directors executed a promissory note loaning $18,395 to Forssberg against Forssberg's shares in the company. Howard agreed with counsel for the OAG that this promissory note was "a means to funnel money to Mr. Forssberg without it having to be recorded as income." In April 2017, Forssberg borrowed $26,000 from his consulting company, but he later referred to this payment as a loan from his parents. SmartInfo also compensates Forssberg for international travel and trips that he takes on behalf of the company, and that amount was around $1,000. Howard testified that although Forssberg had provided some information about his post-divorce income to her, he had not been forthcoming with all his financial records. Howard estimated that Forssberg received over $11,000 per month in income plus fringe benefits.

With respect to the children's health insurance, Howard testified that Forssberg provided coverage for the children through January 2017. He did not provide health insurance for the children from February 2017 through June 2019, the time of the modification hearing. Instead, the children were on the health insurance plan Howard had with her employer, and she paid approximately $302 per month for their coverage. She requested that, going forward, the trial court order Forssberg to reimburse her $302 each month for this coverage and to pay 50% of any uncovered health care costs.

Howard believed, based on Forssberg's employment history, that he could earn more money than he was currently making. When asked if Forssberg had ever said anything to her about why he would rather have his current job, making around $50,000 per year, Howard testified:

> One thing he said was at his age being around 50 and the way the market, his net worth had been lost that when he returned to Sweden, he had lost all of his network and so he had to do this, take this job in Sweden. But that was all that was offered or out there for him.

Howard testified that, in the early 2000s, Forssberg had been approached by other major corporations to do the same work that he performed for Hewlett Packard. She testified that the last time Forssberg had worked in Sweden—before he moved back there after the parties' divorce—was in 2009.

Forssberg testified that after he lost his job with Hewlett Packard in Houston in October 2016, he was not given an opportunity to be rehired by that company in

17

other locations in the world.[5] He testified that he found another job in the United States, but the terms of his visa would not allow him to take another job; instead, he would have to leave the United States and apply for another visa from outside the country.

Forssberg testified that he established WILFOR in early 2017 and that he owns a 100% interest in that company. WILFOR uses any profits it makes to invest in other companies, and Forssberg stated that he does not personally make any money from WILFOR. Forssberg also an interest in several other companies: a 5% interest in SmartInfo, his employer; a 59% interest in Biometrify; less than a 5% interest in Smart Secure; and a 11% interest in Smart Classrooms Managers Secure. Forssberg has received no compensation from Biometrify. Smart Secure pays WILFOR approximately $2,000 per month, Biometrify pays WILFOR approximately $500 per month, and Smart Classrooms—a company on the verge of bankruptcy—pays WILFOR $200 per month. Forssberg also owns shares in several publicly traded companies in Sweden.

Forssberg is the Managing Director of SmartInfo, which he testified is equivalent to the CEO, and he sits on the board of that company, but he lacks the ability to raise his salary or offer himself benefits. He stated, "[T]he company is not

---

[5] He stated that he had a job offer to work for Hewlett Packard in Sweden, but his former manager in the United States refused to approve the rehire.

making enough money for me to raise my salary." Forssberg did not consider himself to be "purposely underemployed," although he agreed that he could possibly get a job making more money than he currently is. He stated that he was not happy with his current salary and wished he made more, but he called it a "good job" and "good for [his] resumé" and stated that "there's not that many jobs making a lot of money in Sweden." He requested that the trial court base his child support obligation on the amount of his income as stated on his Swedish tax returns, or approximately $57,000, representing his salary, interest, and dividends.

With respect to the promissory notes, Forssberg stated that the $26,000 note was executed when he started WILFOR. Forssberg's parents had loaned him money "for different reasons," and he used part of that loan—approximately $26,000—to invest in WILFOR. That loan to WILFOR was used to invest in SmartInfo to provide enough capital for that company to hire Forssberg as an employee instead of as a consultant. WILFOR has paid back part of this loan from Forssberg, and Forssberg used these amounts to pay his child support payments. The $18,000 note was a loan from a friend "because obviously [Forssberg's] salary is not enough to pay for child support." That loan is due to be paid off, with 2% interest, at the end of December 2021. Forssberg also received a loan of 70,000 Swedish Krona—or $7,200—from his parents in January 2019.

Forssberg also testified that when he moved from Sweden in 2009, he "stopped working with people in Sweden to a large degree." When he moved back in late 2016, people in Sweden did not know him or what kind of work he did, and it was difficult for him to find new employment. He also testified that companies in Sweden are less likely to hire someone his age—over 50—because older workers are more expensive. He stated that he would not be able to find a job in Sweden making $100,000 "[b]ecause there are hardly any such jobs available and it's a lot of competition for it."

Ultimately, the trial court modified provisions in the divorce decree concerning possession of and access to the children[6] and modified the decree to require Forssberg to reimburse Howard in the amount of $302 per month for the children's health insurance. The trial court did not change Forssberg's monthly child support payment, which remained set at $1,950 per month.

### D. Analysis

### 1. Whether trial court erred by failing to file findings and conclusions

On appeal, Howard and the OAG argue that the trial court was not required to issue findings of fact and conclusions of law under Family Code section 154.130 because the trial court denied Forssberg's motion to modify and did not modify the

---

[6] The parties reached a mediated settlement agreement concerning these issues and the trial court modified the decree in accordance with this agreement. Forssberg raises no complaint concerning these modifications on appeal.

20

child support obligation. *See Rumscheidt*, 362 S.W.3d at 664 (holding that because trial court did not grant father's motion to modify child support, trial court was not required to issue findings and conclusions under section 154.130); *In re J.D.M.*, 221 S.W.3d at 743 (same); *Terry*, 920 S.W.2d at 425–26 (same).

Here, the final divorce decree set Forssberg's monthly child support obligation at $1,950. The divorce decree also required Forssberg to maintain health insurance for the children "[a]s additional child support" for as long as child support is payable for the children. After the trial court considered the parties' cross-motions to modify, the trial court kept the monthly child support obligation unchanged and ordered Forssberg to continue paying $1,950 per month in child support. The trial court modified the provisions for medical support and ordered Howard to maintain health insurance for the children. The court ordered Forssberg to pay, "as child support," $302 per month for the cost of health insurance until his child support obligation to the children terminates.

An amount that an obligor is ordered to pay as medical support for the child, including the costs of health insurance coverage, "is in addition to the amount that the obligor is required to pay for child support under the guidelines for child support" and "is a child support obligation." TEX. FAM. CODE § 154.183(a)(1)–(2); *id.* § 154.182(b-1) ("If the parent ordered to provide health insurance under Subsection (b)(1) or (2) is the obligee, the court shall order the obligor to pay the obligee, as

additional child support, an amount equal to the actual cost of health insurance for the child, but not to exceed a reasonable cost to the obligor."). By ordering Forssberg to reimburse Howard for the cost of the children's health insurance, the trial court modified Forssberg's child support obligation. We conclude that this modification triggers the trial court's duty under section 154.130(a) to file the findings required by section 154.130(b). *See* TEX. FAM. CODE § 154.130(a)–(b). Because the trial court undisputedly did not file findings pursuant to section 154.130, we conclude that the trial court erred.

Moreover, as Forssberg points out, even if the trial court's modification of the medical support provisions requiring him to reimburse Howard for health insurance costs does not qualify as a modification of child support obligations sufficient to trigger the requirements of section 154.130, the trial court was still required to file findings of fact and conclusions of law pursuant to Rules 296 and 297. After the trial court rendered its modification order, Forssberg timely filed a request for findings of fact and conclusions of law, as allowed by Rule 296. In his request, he specifically "request[ed] that the Court's findings and conclusions include the income, valuation, calculation of child support, liabilities, claims, and offsets on which disputed evidence has been presented." The trial court did not file findings and conclusions in response to this request, nor did it file findings and conclusions in response to Forssberg's notice of past-due findings and conclusions. We conclude that this was

error. *See* TEX. R. CIV. P. 296, 297; *Rumscheidt*, 362 S.W.3d at 664–65 (concluding that although father was not entitled to findings under section 154.130, he timely and properly requested findings and conclusions under Rules 296 and 297 and trial court was required to file findings and conclusions under these rules). We therefore turn to whether this error was harmful.

### 2. Whether trial court's failure to file findings and conclusions harmed Forssberg

If the trial court fails to file findings and conclusions in response to a proper and timely request, we must presume the trial court made all the findings necessary to support the judgment. *Ad Villarai*, 519 S.W.3d at 135 (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). A party may rebut this presumption by demonstrating that the evidence in the record does not support a presumed finding. *Id.*; *Harris Cty. v. Ramirez*, 581 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2019, no pet.). If a trial court fails to file findings when the facts are disputed, "the burden of rebutting every presumed finding can be so burdensome that it effectively 'prevent[s the appellant] from properly presenting its case'" to the appellate court. *Ad Villarai*, 519 S.W.3d at 135 (quoting *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam)). A trial court's failure to file findings and conclusions in response to a proper request "is thus 'presumed harmful, unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury.'" *Id.* (quoting *Cherne Indus., Inc.*

23

*v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)); *Ramirez*, 581 S.W.3d at 427 ("When a party is not prevented from properly presenting its case to the court of appeals, the failure to file findings and conclusions is harmless.").

The general rule is that a trial court's failure to file findings and conclusions harms an appellant if, under the circumstances of the case, he is forced to guess the reason why the trial court ruled against him. *Liberty Mut. Fire Ins. v. Laca*, 243 S.W.3d 791, 794 (Tex. App.—El Paso 2007, no pet.). If there is only a single ground of recovery or a single defense in the case, the record demonstrates that the appellant has suffered no harm from the failure to file findings because he is not forced to guess the reasons for the trial court's judgment. *Pham v. Harris Cty. Rentals, L.L.C.*, 455 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Liberty Mut. Fire Ins.*, 243 S.W.3d at 794. However, in a case in which there are multiple grounds for recovery or multiple defenses, an appellant is forced to guess what the trial court's findings were, unless the findings are provided to him. *Pham*, 455 S.W.3d at 706; *Liberty Mut. Fire Ins.*, 243 S.W.3d at 794. The purpose of allowing a request for findings and conclusions under Rules 296 and 297 is to "narrow the bases of the judgment to only a portion of [the multiple] claims and defenses, thereby reducing the number of contentions that the appellant must raise on appeal." *Pham*, 455 S.W.3d at 706 (quoting *Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 614

(Tex. App.—Dallas 2003, pet. denied)). Forcing the appellant to guess the reasons for the judgment rendered against him defeats the purpose of these rules. *Id.*

Here, we conclude that the trial court's failure to file findings and conclusions forces Forssberg to guess at the reasons for the trial court's decision. *See id.*; *Liberty Mut. Fire Ins.*, 243 S.W.3d at 794. Howard presented evidence that during 2016, the year the parties divorced, Forssberg had earned $99,000 by October of that year, when Hewlett Packard terminated his employment.[7] Howard also testified, when asked how much Forssberg was making with Hewlett Packard at the time of the divorce, that "[t]o my knowledge, I think the last full tax I have is $134,000.00 is the last full tax I have." Forssberg presented evidence that, after he lost his job with Hewlett Packard, he was unable to remain in the United States due to visa restrictions and he had to move back to Sweden, where he had not worked in several years and where he could not find a job paying him a comparable salary to what he had made at Hewlett Packard. His current annual salary at SmartInfo, plus dividends and interest income, totaled approximately $57,000 per year, or roughly $4,750 in gross monthly income. Forssberg argued that this amount was substantially lower than his

---

[7] The record does not contain any determination by the trial court of Forssberg's salary or monthly net resources at the time it entered the divorce decree. For two children, the child support guidelines in the Family Code provide that a support obligation of 25% of the obligor's net resources is presumptively reasonable. *See* TEX. FAM. CODE § 154.125(b). In the decree, the trial court set Forssberg's child support obligation at $1,950, which is 25% of $7,800 per month.

salary at the time of the divorce decree, and he requested that the trial court modify his child support obligation and base it on his current salary.

Howard acknowledged that Forssberg had reported that his annual salary with SmartInfo was around $47,000 or $48,000 per year, but she believed that this was not his sole source of income. She requested that the trial court consider payments made to WILFOR, dividends and interest income, payments made to Forssberg due to his positions on various boards of directors, fringe benefits including travel reimbursements, and loans from Forssberg's family and friends. She estimated, based on the records Forssberg had presented during discovery, that his monthly income was "[o]ver $11,000.00 per month plus fringe benefits." Howard therefore requested that the trial court apply the maximum amount of monthly net resources under the child support guidelines—$8,550 per month[8]—and increase Forssberg's child support obligation to $2,137.50. She also argued that Forssberg was intentionally underemployed and that the trial court should base his child support obligation on his earning potential of $150,000 per year.

---

[8] Family Code section 154.125(a) provides, "The guidelines for the support of a child in this section are specifically designed to apply to situations in which the obligor's monthly net resources are not greater than $7,500 or the adjusted amount determined under Subsection (a-1), whichever is greater." TEX. FAM. CODE § 154.125(a). Subsection 154.125(a-1) requires the Title IV-D agency, the Texas Office of the Attorney General, to adjust the dollar amount provided for in subsection (a) "every six years as necessary to reflect inflation." *Id.* § 154.125(a-1). Effective September 1, 2013, the Texas Attorney General raised the amount from $7,500 to $8,550. *See* 39 Tex. Reg. 4647, 4647 (2013) (Off. of the Att'y Gen.).

Although both parties requested that the trial court modify Forssberg's monthly child support obligation, the trial court did not do so. We therefore presume that the trial court impliedly found no material or substantial change in circumstances relating to Forssberg's monthly net resources. *See Ad Villarai*, 519 S.W.3d at 135 (stating that when trial court fails to file findings and conclusions, we must presume trial court made all findings necessary to support judgment). This implied finding, however, does not appear to be supported by the evidence. Forssberg presented evidence that his net resources had decreased, while Howard presented evidence that Forssberg's net resources had increased, or, alternatively, that the trial court should base his support obligation on his earning potential because he was intentionally underemployed.

Without findings and conclusions, Forssberg—and this Court—is left to guess at how the trial court reached its ultimate conclusion that Forssberg's child support obligation should remain the same. Although the OAG and Howard are correct that the trial court, as the factfinder, has the discretion to believe or disbelieve any testimony, the trial court would have had to disbelieve *all* of Howard's and Forssberg's evidence presented at the modification hearing to reach the conclusion that it did.[9] *See In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.]

---

[9] It is also possible that the trial court believed that some, but not all, of the potential sources of income for Forssberg should be counted as part of his monthly net resources and that the income from these sources added up to an amount not

2009, no pet.) (stating that trial court is in best position to observe and assess demeanor and credibility of witnesses at modification hearing and therefore we defer to trial court's resolution of underlying facts and credibility determinations and do not substitute our judgment for that of factfinder).

Under the facts of this case, we cannot conclude that the record before us "affirmatively shows that the complaining party has suffered no injury" from the trial court's failure to file findings and conclusions. *See Ad Villarai*, 519 S.W.3d at 135 (quoting *Cherne Indus.*, 763 S.W.2d at 772); *Ramirez*, 581 S.W.3d at 427 ("When a party is not prevented from properly presenting its case to the court of appeals, the failure to file findings and conclusions is harmless."); *see also Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) ("Under Texas Rule of Civil Procedure 296, harm to the complaining party is presumed unless the contrary appears on the face of the record when the party makes a proper and timely request for findings and the trial court fails to comply."). Without findings concerning Forssberg's current income and amount of monthly net resources, Forssberg has been prevented from properly challenging the trial court's denial of his motion to modify the child support obligation. *See* Tex. R. App. P. 44.1(a); *Ad Villarai*, 519 S.W.3d at 135.

---

materially different from his net resources at the time of the divorce decree, but without findings and conclusions, we would have to guess at which pieces of evidence the trial court believed and which it disbelieved.

The remedy for the erroneous failure to file findings of fact and conclusions of law is to abate the appeal and allow the trial court to enter proper findings and conclusions. *See Ad Villarai*, 519 S.W.3d at 136; *Ramirez*, 581 S.W.3d at 427 (stating that when failure to file findings and conclusions is harmful, appellate court "may abate the appeal and remand the case to the trial court with instructions to file the findings and conclusions"). We therefore direct the trial court to enter findings and conclusions with respect to Forssberg's income at the time of the modification proceeding, his monthly net resources at the time of the modification proceeding, and whether he is intentionally underemployed.

The clerk of the trial court is directed to prepare and forward to this Court a supplemental clerk's record containing the trial court's findings of fact and conclusions of law. The supplemental clerk's record is due to be filed in this Court on or before September 14, 2021. Upon filing of the supplemental clerk's record, the appeal will be reinstated, and the parties will be given an opportunity to supplement their briefs.

## Conclusion

We abate the appeal and remand the case to the trial court to file findings of fact and conclusions of law.

April L. Farris
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Farris.